# GERAGOS & GERAGOS
A PROFESSIONAL CORPORATION
LAWYERS
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411
TELEPHONE (213) 625-3900
FACSIMILE (213) 232-3255
GERAGOS@GERAGOS.COM

MARK J. GERAGOS (SBN 108325)
BEN MEISELAS (SBN 277412)
MARK BOLIN (SBN 302614)

Attorneys for Plaintiff Melissa Levine, individually and on behalf of herself and all others similarly situated

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA LEVINE, individually and on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GLASSDOOR, INC., A Delaware Corporation, and DOES 1-20, inclusive,<br><br>Defendants. | Case No.: 2:16-cv-5696<br><br>**CLASS COMPLAINT**<br><br>1. **Violation of the Stored Communications Act [18 U.S.C. §§ 2702, 2707]**<br>2. **Violation of California's Unfair Competition Law [Cal. Bus. & Prof. Code §§ 17200** *et seq.***]**<br>3. **Public Disclosure of Private Facts**<br>4. **Negligence**<br>5. **Breach of Implied Contract**<br>6. **Breach of Contract**<br>7. **Unjust Enrichment**<br>8. **Injunctive Relief**<br><br>**DEMAND FOR JURY TRIAL** |

# COMPLAINT

1. Plaintiff Melissa Levine brings this putative class action, on behalf of herself and a putative class comprised of approximately 600,000 registered members of Glassdoor, Inc. ("Glassdoor"), a popular jobs and recruiting site that aggregates anonymous employer reviews by employees.

2. This putative class action is based on Glassdoor's willful and intentional violations of the Stored Communications Act, 18 U.S.C. §§ 2702, 2707, in addition to other violations of State law.

3. Glassdoor was founded on the idea that **transparency in the workplace** can and will dramatically improve the job search process. In order to achieve this transparency, Glassdoor created a system where employees and former employees are instructed and compelled, as a perquisite to joining the anonymous community, to bring anonymous reviews of their workplaces, post salaries, post photographs, and rate their supervisors. Glassdoor has amassed a wealth of information on employers and employees from this system, and has become a billion dollar company poised to launch one of the most lucrative IPOs in recent history.

4. Glassdoor emphasizes that the anonymity of its members is integral to its success. Without guaranteed anonymity, Glassdoor leaves its members open to retaliation based on the reviews that are the bread and butter of its business, a fact that it readily concedes.

5. Since its creation, Glassdoor has benefited from the contributions of its members to the point where it is now valued at approximately $1 billion.

6. On July 22, 2016, Glassdoor sent its members an email regarding changes to its terms of use. In this email, Glassdoor publicly revealed the email addresses of at least 600,000 members, violating their privacy rights and its own policies.

7. Glassdoor has made billions of dollars on the supposedly anonymous reviews of companies supplied by its members. Instead of safeguarding the identities

of its members against retaliation, Glassdoor carelessly provided the emails of 600,000 member emails to the public, violating the trust placed in them and opening up its members to retaliation.

## JURISDICTION AND VENUE

8.     This Court has federal question jurisdiction over this class action pursuant to 28 U.S.C. § 1331 because the matter includes a federal claim for violation of the Stored Communications Act, 18 U.S.C. § 2702, 2707.

9.     In addition, this Court has supplemental jurisdiction over Plaintiff's state statutory and common law claims under 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiff and Class and/or Collective Action Members' claims occurred in the Central District of California as Defendant: (a)  is authorized to conduct business in this District and has intentionally availed itself to the laws and markets within this District through the promotion, marketing, distribution and sale of its products in this District:  (b)  currently does substantial business in this District; and (c)  is subject to personal jurisdiction in this District.

## PARTIES

11.     At all relevant times Melissa Levine was a resident of Los Angeles County, California, and a citizen of California.  Plaintiff, on behalf of herself and the putative National class, and California sub-class, brings this class action against Glassdoor.

12.     Defendant Glassdoor is a Delaware Corporation with its principal place of business in Mill Valley, California.

13.     Each of the DOES 1-20 is the agent, servant, partner, joint-venturer, co-venturer, "media partner," principal, director, officer, manager, employee, or shareholder of one or more of its co-defendant(s) who aided, abetted, controlled, and directed or conspired with and acted in furtherance of said conspiracy with one or

more of its co-defendant(s) in said co-defendant(s) performance of the acts and omissions described below. Plaintiff sues each of these Doe Defendants by these fictitious names because Plaintiff does not know these Defendants true names and capacities. Despite reasonable efforts, Plaintiff has not been able to ascertain the identity of DOES 1-20.

14. Plaintiff further alleges that each Defendant is directly liable and/or vicariously, jointly and severally liable for the violations complained of herein.

15. Upon information and belief, Glassdoor's conduct has directly affected approximately 600,000 of its members, to whom Glassdoor owes a legal duty of care and to whom Glassdoor is directly responsible for damages for the violation of their privacy.

## FACTUAL ALLEGATIONS

16. Glassdoor is a privately-owned website where employees and former employees can anonymously review companies and their management. In June 2007, Robert Hohman, Glassdoor's CEO, and Expedia founder Rich Barton, Glassdoor's Chairman, decided to create Glassdoor to inform and aid those in the working force looking to make career decisions.

17. Since its creation in June 2007, Glassdoor has become the fastest growing jobs and recruiting site in the world. With employees from all over the world using this site under the protection of confidentiality, the site has over 8 million company reviews, CEO approval ratings, salary reports, interview reviews and questions, benefits reviews, and more. As of 2016, Glassdoor has over 30 million users from 190 countries.

18. Glassdoor represents both sides of the corporate dichotomy: bosses and employees. For employers, Glassdoor offers branding, advertising, and targeted recruiting of job seekers. For current employees and job seekers the site is a space of open and anonymous communication. The information aggregated on the site allows job seekers to develop an informed decision about their workplace. At the same time,

current employees can anonymously share their experiences about their workplace to advise potential coworkers and possibly inform their employer about their discontentment with the company.

19. Integral to Glassdoor's business model is its commitment to keeping the identifying information of its members confidential. Without that confidentiality members who share negative opinions of their current or former workplaces would be vulnerable to potential retaliation. That potential for retaliation would deter people from contributing to Glassdoor and make the transparency that is supposedly the hallmark of its business impossible. As such, Glassdoor has gone to great lengths to make its name synonymous with privacy.

20. For example, Glassdoor has defied subpoenas that seek the identities of its members, stating that "Glassdoor is an anonymous community and we will vigorously fight on behalf of our users to protect their identities and right to free speech, provided they adhere to our community guidelines and terms of service."

21. In addition, in a page devoted to "Protecting member anonymity" on its website, Glassdoor declares that "[a]ll contributions submitted to Glassdoor are anonymous to other community members, including employers. Glassdoor does not display your email address, Facebook profile, or any other personal information."

22. On July 22, 2016, Glassdoor sent an email out to its members updating its Terms of Use.

23. However, instead of blindly copying email recipients Glassdoor exposed the addresses of more than 2 percent of its members, amounting to more than 600,000 people.

24. The emails were sent to multiple sets of users 1,000 at a time, and each email recipient was able to see the email addresses of 999 other Glassdoor members.

25. Glassdoor itself has admitted to the breach, stating that "[w]e are extremely sorry for this error. We take the privacy of our users very seriously and we know this is not what is expected of us. It certainly isn't how we intend to operate."

26. Glassdoor's prominence in the industry is nationally recognized, and in 2012, the site received $20 million of venture capital, taking its funding from outside sources to $42.2 million. Last year in 2015, Google Capital assisted the site in raising an additional $70 million, which raised the company's value to at least $1 billion.

## CLASS ACTION ALLEGATIONS

27. Plaintiff brings this class action on behalf of herself and all others similarly situated as Class Members pursuant to Rule 23 of the Federal Rules of Civil Procedure.

28. The proposed class that Plaintiff seeks to represent for the class action is composed of: Individuals who were registered with Glassdoor, Inc. and whose identities were revealed by Glassdoor, Inc. in an email sent on Friday, July 22, 2016.

29. Plaintiff also seeks to represent a proposed subclass (the "California Subclass") that is composed of: Individuals residing in California who were registered with Glassdoor, Inc. and whose identities were revealed by Glassdoor, Inc. in an email sent on Friday, July 22, 2016.

30. Plaintiff is a member of the putative classes that she seeks to represent. Plaintiff is a United States resident, also residing in California, who is a registered member of Glassdoor.

31. The definition of the putative classes are narrowly tailored so as to include only identifiable members whose emails were revealed in Glassdoor's July 22, 2016, email updating its terms of use.

32. The proposed classes are so numerous that the individual joinder of all its members, in this or any action, is impracticable. The exact number or identification of the members of the putative classes are presently unknown to Plaintiff, but it is believed to comprise approximately 600,000 individuals worldwide, thereby making joinder impractical.

33. Common questions of fact and law exist as to all Class Members and predominate over questions affecting only individual members. These include, but are not limited to, the following:

    a. Whether Glassdoor owed a duty to keep the email addresses of its members private.

    b. Whether Glassdoor knowingly revealed the email addresses of its members in its July 22, 2016 email.

    c. Whether Glassdoor negligently revealed the email addresses of its members in its July 22, 2016 email.

    d. Whether Glassdoor violated its own guidelines when it revealed the email addresses of its members in its July 22, 2016 email.

    e. Whether Glassdoor agreed to keep the identifying information of its members confidential in exchange for member contributions in the form of reviews, ratings, and other posts.

    f. Whether Plaintiff and the Class members are entitled to an injunction, damages, restitution, equitable relief and other relief deemed appropriate and the amount and nature of such relief.

34. Plaintiff's claims are typical of the claims of the putative class members. Plaintiff and all putative class members had their personal email addresses publicly disclosed without their consent, subjecting them to potential retaliation and emotional distress over the fear of such retaliation.

35. The factual bases of Defendant's misconduct are common to the putative class members and represent a common failure to safeguard the personal information of members who had been assured of their anonymity. Plaintiff is asserting the same rights, making the same claims, and seeking the same relief for herself and all other putative class members. The central question of whether Defendant willfully or negligently, in breach of contract and federal and state law revealed the personal information of its members predominates over all other questions, legal and factual in

this litigation.

36. Plaintiff is an adequate representative of the proposed class because she is a putative class member and does not have interests that conflict with those of the other putative class members she seeks to represent. Plaintiff is represented by experienced and able counsel, who has litigated numerous class-action lawsuits, and Plaintiff's Counsel intends to prosecute this action vigorously for the benefit of the proposed class. Plaintiff and their Counsel will fairly and adequately protect the interests of the class members.

37. A class action is the superior available method for the efficient adjudication of this litigation because:

    a. The prosecution of separate actions by individual members of the Class would create a foreseeable risk of inconsistent or varying adjudications which would establish incompatible results and standards for Defendant;

    b. Adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their own separate interests;

    c. Class action treatment avoids the waste and duplication inherent in potentially thousands of individual actions, and conserves the resources of the courts; and

    d. The claims of the individual class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for the members of the Class to individually seek redress for Defendant's wrongful conduct. Even if the members of the Class could afford individual litigation, the court system could

not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

38. A class action for injunctive and equitable relief pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate. Defendant acted or refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole. Defendant's actions are generally applicable to the Class as a whole, and Plaintiff, on behalf of the Class, seeks damages and injunctive relief described herein. Moreover, Defendant's systemic policy and practices make declaratory relief with respect to the Class as a whole appropriate.

## FIRST CAUSE OF ACTION
**For Violation of the Federal Stored Communications Act, 18 U.S.C. §§ 2702, 2707**
**(On Behalf of the National Class or, alternatively, the California Putative Subclass)**

39. Plaintiff restates each and every paragraph of this Complaint as if fully rewritten herein.

40. The Stored Communications Act ("SCA") contains provisions that provide consumers with redress if a company mishandles their electronically stored information. The SCA was designed, in relevant part, "to protect individuals' privacy interests in personal and proprietary information." S. Rep. No. 99-541, at 3 (1986), reprinted in 1986 U.S.C.C.A.N. 3555 at 3557.

41. Section 2702(a)(1) of the SCA provides that "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any

person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1).

44. The SCA defines "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." *Id.* at § 2510(15).

45. Defendant provides an electronic communication service because it maintains a website where members send and receive electronic communications regarding workplace conditions and job openings.

46. By failing to take commercially reasonable steps to safeguard sensitive personal contact information Defendant has knowingly divulged private information that was communicated to Defendant on condition that the information be kept strictly confidential to avoid retaliation from current and former employers.

47. By revealing Plaintiff's personal contact information Defendant has violated Plaintiff's right to privacy and knowingly divulged the contents of Plaintiff's communications.

48. Specifically, by revealing Plaintiff's identifying information, Defendant has publicly outed her as a member of Glassdoor without her consent.

49. Moreover, Defendant has effectively published Plaintiff's workplace reviews by releasing her identifying information, as any employer or co-worker familiar with her work history will in all likelihood be able to determine the origin of her posts.

50. Plaintiff and the putative class members have suffered general and special damages including but not limited to harm to their interest in privacy, mental distress in the form of severe anxiety, embarrassment, and fear for their jobs, and attorneys' fees and the costs of bringing this suit. Those injuries were caused by Defendant's July 22, 2016 public outing of Plaintiff and the putative class members.

## SECOND CAUSE OF ACTION
### For Violation of California's Unfair Competition Law,

**Cal. Bus. & Prof. Code §§ 17200 *et seq.***

**(On Behalf of the National Class or, alternatively,**

**the California Putative Subclass)**

51. Plaintiff, individually, and on behalf of all others similarly situated, restates each and every paragraph of this Complaint as if fully rewritten herein.

52. Defendant engaged in unlawful, unfair, or fraudulent business acts or practices within the meaning of Business and Professions Code §**§** 17200 *et seq.*, by violating California's Online Privacy Protection Act ("CalOPPA"), Business and Professions Code § 22576.

53. Defendant violated CalOPPA by failing to comply with the provisions of Defendant's website privacy policy which prohibits Defendant from "disclos[ing] [members'] individual account or usage data to third parties . . . ."

54. Defendant's privacy policy reassures members that data disclosed for certain purposes "cannot be used to identify [members] individually." These reassurances are consistent with Defendant's core business principle of guaranteeing member anonymity.

55. Defendant violated CalOPPA by violating its privacy policy when it publicly revealed the email addresses of at least 600,000 members in its July 22, 2016 emails to all of Glassdoor members regarding changes to its terms of use.

56. At a minimum, this violation was negligent and material because Defendant carelessly leaked the email addresses of its members to third parties, destroying member anonymity undermining the core principle of Defendant's business, violating the trust placed in Defendant, and exposing Plaintiff and the putative classes to personal identification and retaliation by their employers.

57. Plaintiff and the putative class members have suffered general and special damages including but not limited to harm to their interest in privacy, mental distress in the form of severe anxiety, embarrassment, and fear for their jobs, and

attorneys' fees and the costs of bringing this suit. Those injuries were caused by Defendant's July 22, 2016 public outing of Plaintiff and the putative class members.

### THIRD CAUSE OF ACTION

### For Public Disclosure of Private Facts

### (On Behalf of the National Class or, alternatively,

### the California Putative Subclass)

58. Plaintiff, individually, and on behalf of all others similarly situated, restates each and every paragraph of this Complaint as if fully rewritten herein.

59. On July 22, 2016, Defendant sent an email to its members and in doing so knowingly revealed the personal identifying information of 600,000 of them, effectively outing them as members of Glassdoor and destroying the anonymity of their reviews, ratings, and other posts.

60. Plaintiff and the putative class members' contributions to Glassdoor and the fact of their membership are confidential and private. By revealing the foregoing Defendant violated Plaintiff's right to privacy and rendered Plaintiff vulnerable to retaliation from employers.

61. Plaintiff and the putative class members' contributions to Glassdoor and the fact of their membership are not legitimate public concerns because those posts detail their workplace experiences, opinions, and personal history with their former and current employers.

62. Plaintiff and the putative class members have suffered general and special damages including but not limited to harm to their interest in privacy, mental distress in the form of severe anxiety, embarrassment, and fear for their jobs, and attorneys' fees and the costs of bringing this suit. Those injuries were caused by Defendant's July 22, 2016 public outing of Plaintiff and the putative class members.

### FOURTH CAUSE OF ACTION

### For Negligence

### (On Behalf of the National Class or, alternatively,

**the California Putative Subclass)**

63. Plaintiff, individually, and on behalf of all others similarly situated, restates each and every paragraph of this Complaint as if fully rewritten herein.

64. By outing Plaintiff and the putative class members as members of Glassdoor, Defendant breached the duty of care it owed them. Defendant knew or should have known that by making Plaintiff's contact information public, it was opening them up to retaliation in violation of federal law, state law, and its own terms of use. Nevertheless, Defendant failed to put systems in place to prevent the public from determining the identity of its members. Instead, Defendant knowingly emailed 600,000 members with each person's email address in plain view.

65. The foregoing conduct by Defendant, both in failing to institute reasonable safeguards to protect the anonymity of its members and in sending the July 22, 2016 email identifying 600,000 members, breached Defendant's duty of care. Defendant's actions evidenced such a slight degree of care that they can only be described as grossly negligent.

66. Plaintiff and the putative class members have suffered general and special damages including but not limited to harm to their interest in privacy, mental distress in the form of severe anxiety, embarrassment, and fear for their jobs, and attorneys' fees and the costs of bringing this suit. Those injuries were caused by Defendant's July 22, 2016 public outing of Plaintiff and the putative class members.

## FIFTH CAUSE OF ACTION

**For Breach of Implied Contract**

**(On Behalf of the National Class or, alternatively,**

**the California Putative Subclass)**

67. Plaintiff, individually, and on behalf of all others similarly situated, restates each and every paragraph of this Complaint as if fully rewritten herein.

68. Plaintiff and the putative class members entered into implied contracts with Defendant whereby Plaintiff and the putative class members were to provide an

anonymous review on Defendant's website in exchange for access to Defendant's database of employer information and the assurance of anonymous membership.

69. By guaranteeing member anonymity, Defendant knew or should have known that Plaintiff and the putative class would interpret Defendant's guarantee as an agreement to be bound by such promise.

70. Defendant knew or should have known that Plaintiff and the putative class members' act of membership enrollment was an agreement to enter into such contract whereby Defendant was to guarantee member anonymity.

71. Defendant's conduct in guaranteeing membership anonymity and Plaintiff and the putative class members' act of membership enrollment were intentional.

72. The contract terms were clear to the parties such that they understood their respective obligations under the contract.

73. Plaintiff and the putative class members performed their obligations under the contracts by each providing at least one anonymous review, rating, or other post on Defendant's website.

74. Defendant breached the contracts by disclosing to all of its members the email addresses of Plaintiff and the putative class members, thereby failing to keep their membership anonymous.

75. Plaintiff and the putative class members have suffered general and special damages including but not limited to harm to their interest in privacy, mental distress in the form of severe anxiety, embarrassment, and fear for their jobs, and attorneys' fees and the costs of bringing this suit. Those injuries were caused by Defendant's July 22, 2016 public outing of Plaintiff and the putative class members.

## SIXTH CAUSE OF ACTION
### For Breach of Contract
### (On Behalf of the National Class or, alternatively, the California Putative Subclass)

76. Plaintiff, individually, and on behalf of all others similarly situated, restates each and every paragraph of this Complaint as if fully rewritten herein.

77. Plaintiff and the putative class members entered into contracts with Defendant whereby Plaintiff and the putative class members were to provide an anonymous review, rating, or other post on Defendant's website in exchange for access to Defendant's database of employer information and the guarantee of anonymous membership.

78. These contract terms were clear to the parties such that they understood their respective obligations under the contract.

79. Plaintiff and the putative class performed their obligations under the contracts by each providing at least one anonymous review, rating, or other post on Defendant's website.

80. Defendant breached the contracts by disclosing to all of its members the email addresses of Plaintiff and the putative class members, thereby failing to keep their membership anonymous.

81. Plaintiff and the putative class members have suffered general and special damages including but not limited to harm to their interest in privacy, mental distress in the form of severe anxiety, embarrassment, and fear for their jobs, and attorneys' fees and the costs of bringing this suit. Those injuries were caused by Defendant's July 22, 2016 public outing of Plaintiff and the putative class members.

## SEVENTH CAUSE OF ACTION

### For Unjust Enrichment

**(On Behalf of the National Putative Class or, alternatively, the California Subclass)**

80. Plaintiff, individually, and on behalf of all others similarly situated, restates each and every paragraph of this Complaint as if fully rewritten herein.

81. Plaintiff, and the putative class, conferred a tangible economic benefit upon Defendant by signing up as a member of Glassdoor, sacrificing privacy rights and privileges, consuming advertisements, and posting reviews and ratings of companies, effectively creating the content on which Defendant's profits are based.

82. As a result of members' foregoing activities on its webpage Defendant Glassdoor has earned hundreds of millions of dollars in revenue. Defendant has been enriched, because of and at the expense of the Plaintiff and each member of the putative classes.

83. In exchange for the contributions of Plaintiff and the putative class members, Defendant knowingly revealed their identifying information to its members, and the public at large.

84. Plaintiff and the putative class members have suffered harm to their interest in privacy, mental distress including but not limited to severe anxiety, embarrassment, fear for their jobs, and special damages including but not limited to the costs of bringing this suit. Those injuries were caused by Defendant's July 22, 2016 public outing of Plaintiff and the putative class members.

85. Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiff and members of the putative classes.

86. It would thus be unjust and inequitable for Defendant to retain the benefit without restitution or disgorgement of monies paid to Defendant, or such other appropriate equitable remedy as appropriate, to the Plaintiff and other members of the putative classes.

## EIGHTH CAUSE OF ACTION

**For Injunctive Relief**

**(On Behalf of the National Class or, alternatively,**

**the California Putative Subclass)**

87. Plaintiff, individually, and on behalf of all others similarly situated, restates each and every paragraph of this Complaint as if fully rewritten herein.

88. Defendant has refused to act on grounds generally applicable to the injunctive relief sought by Plaintiffs and other members of the putative class and subclass, thereby making final injunctive relief appropriate.

89. Defendant's conduct, as more fully set forth herein, both in the past and through the present, has demonstrated a willful disregard for the privacy and job security of its members.

90. If Defendant is allowed to continue with these practices, members, including the Plaintiff and the putative class and subclass will be irreparably harmed in that they do not have a plain, adequate, speedy, or complete remedy at law to address all of the wrongs alleged in this Complaint, unless injunctive relief is granted to stop Defendant's improper conduct.

91. Plaintiff and the putative class and subclass are therefore, entitled to an injunction requiring Defendant to develop a more secure system for safeguarding the anonymity of its users.

## PRAYER FOR RELIEF

WHEREFORE, the putative representative Plaintiff, on behalf of herself and the putative members of the classes defined herein prays for judgment against the Defendant as follows:

    A. For an order certifying this action and/or common issues raised herein as a "Class Action under the appropriate provision of Federal Rule of Civil Procedure 23(a), 23(b) and 23(c); designating Class Representatives; and appointing the undersigned to serve as class counsel.

    B. For notice of class certification and of any relief to be disseminated to all Class Members and for such other further notices as this Court deems appropriated under Fed. R. Civ. P. 23(d)(2);

C. For an order requiring complete and immediate disclosure of all studies, reports, analyses, data, compilations, and other similar information within the possession, custody, or control of Defendant concerning, relating to, or involving the protection of member anonymity.

D. For an order barring Defendant from destroying or removing any computer or similar records which record evidence related to Glassdoor's member records.

E. For an order barring Defendant from attempting, on its own or through its agents, to induce any putative Class Members to sign any documents which in any way releases any of the claims of any Putative Class Members;

F. For an award of compensatory damages in the amount to be determined for all injuries and damages described herein;

G. For an award of statutory damages;

H. For an award of punitive damages to the extent allowable by law, in an amount to be proven at trial;

I. Awarding restitution and disgorgement of Defendant's revenues to the Plaintiff and the proposed Class Members;

J. Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them, restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by the Court to be wrongful;

K. Ordering Defendant to engage in a corrective advertising campaign;

1    L.   Awarding attorneys fees and costs; and

2    M.   Providing such other relief as may be just and proper.

7  Dated: August 1, 2016         GERAGOS & GERAGOS, APC

9                 /s/Mark J. Geragos
10                MARK J. GERAGOS
                  BEN J. MEISELAS
11                MARK BOLIN
12                Attorneys for Plaintiff Melissa Levine, individually and on behalf of herself and all others similarly situated

- 19 -
CLASS COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiff, individually, and on behalf of all others similarly situated hereby demands a trial by jury.

Dated: August 1, 2016          GERAGOS & GERAGOS, APC

     /s/Mark J. Geragos
MARK J. GERAGOS
BEN J. MEISELAS
MARK BOLIN
Attorneys for Plaintiff Melissa Levine, individually and on behalf of herself and all others similarly situated