**GREENBERG TRAURIG, LLP**
Ian C. Ballon (SBN 141819)
Ballon@gtlaw.com
Robert J. Herrington (SBN 234417)
HerringtonR@gtlaw.com
Rebekah S. Guyon (SBN 291037)
GuyonR@gtlaw.com
1840 Century Park East, 19th Floor
Los Angeles, CA 90067-2121
Tel: 310-586-7700
Fax: 310-586-7800

Attorneys for Defendant
GLASSDOOR, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| MELISSA LEVINE, individually and on behalf of herself and all others similarly situated<br><br>        Plaintiffs,<br><br>vs.<br><br>GLASSDOOR, INC., a Delaware Corporation, and DOES 1-20, inclusive,<br><br>        Defendants. | CASE NO. 2:16-cv-05696-FMO-JEM<br><br>**DEFENDANT GLASSDOOR, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Declaration of Tom O'Brien; [Proposed] Order Filed Concurrently]<br><br>Hearing Date:    November 3, 2016<br>Time:              10:00 a.m.<br>Room:            Courtroom 22<br>                    5th Floor<br><br>Hon. Fernando M. Olguin |

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ...................................................................1

II. FACTUAL BACKGROUND...................................................................2

    A. Plaintiff Agreed to the Terms of Use When She Created Her Account. ........2

    B. The Terms of Use Included a Binding Arbitration Provision.......................3

    C. Glassdoor Updated the Terms of Use and Agreement to Arbitrate in July 2016. ...........................................................................................4

III. ARGUMENT.....................................................................................7

    A. Plaintiff Is Required to Arbitrate Her Claims. ................................7

        1. Plaintiff Agreed to Arbitrate When She Signed Up for a Glassdoor Account. ...........................................................8

        2. Plaintiff's Claims Are Covered by the Parties' Agreement to Arbitrate. .........................................................................10

        3. Any Challenges to Formation or Enforceability Are for the Arbitrator...........................................................................11

    B. This Action Should Be Stayed Pending Arbitration. ....................13

    C. To the Extent Plaintiff Is Not Required to Arbitrate, the Case Must Be Transferred to the Northern District of California Under the Forum Selection Clause. .......................................................................14

IV. CONCLUSION.................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allied-Bruce Terminix Cos. v. Dobson*,
   513 U.S. 265 (1995)......................................................................................7

*Am. Exp. Co. v. Italian Colors Rest.*,
   133 S.Ct. 2304 (2013)..................................................................................7

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)......................................................................................7

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*,
   134 S.Ct. 568 (2013)..............................................................................14, 15

*Automattic Inc. v. Steiner*,
   82 F.Supp.3d 1011 (N.D. Cal. 2015)........................................................14

*Bischoff v. DirecTV, Inc.*,
   180 F.Supp.2d 1097 (C.D. Cal. 2002).....................................................13

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) .........................................................1, 7, 12

*Buckeye Check Cashing, Inc. v. Cardegna*,
   546 U.S. 440 (2006)....................................................................................11

*Carnival Cruise Line, Inc. v. Shute*,
   499 U.S. 585 (1991)....................................................................................15

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) .............................................................2, 7, 10

*Citizens Bank v. Alafabco, Inc.*,
   539 U.S. 52 (2003)........................................................................................7

*Crawford v. Beachbody, LLC*,
   No. 14cv1583-GPC(KSC), 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ....................8

*Crook v. Wyndham Vacation Ownership, Inc.*,
   No. 13–CV–03669–WHO, 2013 WL 6039399 (N.D. Cal. Nov. 8, 2013)..................12

*In re Facebook Biometric Information Privacy Litig.*,
 _ F.Supp.3d _, 2016 WL 2593853 (N.D. Cal. 2016).....................................9

*Ferguson v. Corinthian Colleges, Inc.*,
 733 F.3d 928 (9th Cir. 2013) ...............................................................10, 11

*Garcia v. Enter. Holdings, Inc.*,
 78 F.Supp.3d 1125 (N.D. Cal. 2015) ............................................................8

*Guidewire Software, Inc. v. Chookaszian*,
 No. 12–CV–03224–LHK, 2012 WL 5379589 (N.D. Cal. Oct. 31, 2012) ...................12

*Kilgore v KeyBank, Na. Ass'n*,
 673 F.3d 947 (9th Cir. 2012) ....................................................................13

*Kimble v. Rhodes Coll., Inc.*,
 No. 10–CV–05786–EMC, 2011 WL 2175249 (N.D. Cal. June 2, 2011) ...................12

*Leong v. Myspace, Inc.*,
 No. CV 10-8366 AHM EX, 2011 WL 7808208 (C.D. Cal. Mar. 11,
 2011) ................................................................................................8

*Leyva v. Certified Grocers of Cal. Ltd.*,
 593 F.2d 857 (9th Cir. 1979) ....................................................................13

*Moses J. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
 460 U.S. 1 (1983).............................................................................7, 10

*Murphy v. Schneider Nat'l Inc.*,
 362 F.3d 1133 (9th Cir. 2004) ..................................................................15

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
 724 F.3d 1069 (9th Cir. 2013) ..............................................................10, 12

*Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*,
 741 F.2d 273 (9th Cir. 1984) ....................................................................14

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
 388 U.S. 395 (1967)..............................................................................11

*Qualcomm Inc. v. Nokia Corp.*,
 466 F.3d 1366 (Fed. Cir. 2006) .................................................................12

*Rent-A-Ctr., W., Inc. v. Jackson*,
 561 U.S. 63 (2010)..................................................................7, 11, 12, 13

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999) ............................................................... 10

*Swift v. Zynga Game Network, Inc.*,
  805 F.Supp.2d 904 (N.D. Cal. 2011) .............................................. 1, 8, 9

*Trujillo v. Gomez*,
  No. 14CV2483 BTM BGS, 2015 WL 1757870 (S.D. Cal. Apr. 17, 2015) ............... 11

*In re Verisign, Inc., Derivative Litig.*,
  531 F.Supp.2d 1173 (N.D. Cal. 2007) ..................................................... 10

*Yahoo! Inc. v. Iversen*,
  836 F.Supp.2d 1007 (N.D. Cal. 2011) ..................................................... 12

*Yelp Inc. v. Catron*,
  70 F.Supp.3d 1082 (N.D. Cal. 2014) ...................................................... 14

*Zaltz v. JDate*,
  952 F.Supp.2d 439 (E.D.N.Y. 2013) ....................................................... 14

**Federal Statutes**

9 U.S.C. § 2 .................................................................................... 9

9 U.S.C. § 3 .......................................................................... 2, 13, 14

28 U.S.C. § 1404(a) ...................................................................... 14, 15

**Rules**

American Arbitration Association Rules, Rule 14(a) .................................. 12, 13

## <u>NOTICE OF MOTION AND MOTION</u>

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 3, 2016, at 10:00 a.m., in Courtroom 22 of the above-captioned Court, located at 312 North Spring Street, Los Angeles, California, Defendant Glassdoor, Inc. ("Glassdoor") will and hereby does move this Court for an order compelling individual arbitration and staying this case pending completion of arbitration. Alternatively, to the extent Plaintiff is not required to arbitrate, Glassdoor respectfully moves for an order transferring this case to the Northern District of California pursuant to the parties' agreement on venue.

Plaintiff Melissa Levine ("Plaintiff") agreed to Glassdoor's Terms of Use when she created a Glassdoor account in February 2015. The parties' Terms of Use include a broad arbitration provision encompassing all disputes arising under or related in any way to the parties' agreement or the use of Glassdoor.com. Plaintiff's claims fall squarely within the parties' agreement to arbitrate. Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., the Court should compel arbitration and stay the case.  Alternatively, to the extent any claims are not sent to arbitration, the Terms of Use include an exclusive choice-of-forum clause. Under that provision, the parties agreed to litigate in the Northern District of California and any remaining claims should be transferred to that venue pursuant to 28 U.S.C. section 1404.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Tom O'Brien, all pleadings and files in this matter, all matters of which this Court may take judicial notice, and upon such other and further oral or documentary evidence as may be presented to the Court at or prior to the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to Central District of California Local Rule 7-3. Counsel for Glassdoor contacted counsel for Plaintiff on Tuesday, September 27 to set up a Local Rule 7-3 conference, providing a detailed outline of the arguments raised in this Motion. October 3 was the first day that

1  counsel for Plaintiff was available for a conference. During that conference, the parties

2  discussed the grounds for this Motion, and Plaintiff's counsel indicated that they would

3  oppose the Motion.

4

5  DATED:  October 6, 2016                    GREENBERG TRAURIG, LLP

6

7                                        By:   */s/ Ian C. Ballon*
                                               IAN C. BALLON
8                                              ROBERT J. HERRINGTON
                                               Attorneys for Defendant
9                                              GLASSDOOR, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES
## I.   PRELIMINARY STATEMENT

Plaintiff agreed to arbitrate the claims she is asserting in this case. When she signed up for Glassdoor.com, Plaintiff expressly agreed to Glassdoor's Terms of Use agreement, which included a provision requiring individual arbitration. The arbitration provision is broad, requiring the parties to arbitrate any and all claims arising under or related in any way to the parties' Terms of Use or Plaintiff's use of Glassdoor. The claims Plaintiff seeks to assert in this case are covered by the parties' arbitration agreement, and the Court should compel Plaintiff to arbitrate her claims, as agreed.

Under the Federal Arbitration Act (FAA), the Court must compel arbitration where (1) " there is an agreement to arbitrate between the parties" and (2) " the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84 (2002)). Both elements are met here.

**First**, the parties agreed to arbitration. Plaintiff was notified that—by signing up for an account on Glassdoor.com—she was agreeing to the Terms of Use and was provided a link to the full Terms. (Declaration of Tom O'Brien, "O'Brien Decl." ¶¶ 4-5, Ex. A.) Courts considering similar agreements have consistently found binding contracts and compelled arbitration. *See, e.g.*, *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011) (compelling arbitration because "Plaintiff was provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the 'I accept' button and she admittedly clicked 'Accept,' . . . a binding contract was created here."); *see also* section III.A.1, *infra*. This Court should do the same.

**Second**, Plaintiff's claims are covered by the arbitration agreement. The parties expressly agreed to arbitrate all disputes "arising under or related in any way" to the parties' agreement or use of Glassdoor. (O'Brien Decl. ¶ 7, Ex. C (2016 TOU ¶ 14B).) Courts broadly construe similar provisions and compel arbitration of all claims that are based on the agreement containing the arbitration provision. *See* section III.A.2, *infra*;

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130-31 (9th Cir. 2000) (finding that "any dispute, controversy or claim arising out of or relating to" language is broad and far reaching). In this case, Plaintiff's claims are all based on the Terms of Use agreement, as well as the use of Glassdoor.com. The core allegation is that, when signing up for an account, Plaintiff provided her email address, and Glassdoor allegedly agreed to keep that information confidential, but did not do so. (Compl. ¶¶ 6, 19, 27-29) (claiming Glassdoor breached its agreements and violated its policies by revealing user email addresses). All of Plaintiff's claims are based on this allegation and are therefore covered by the parties' arbitration provision.

Because Plaintiff agreed to arbitrate her claims, the Court should grant this Motion, compel arbitration, and stay further proceedings pending completion of arbitration. *See* 9 U.S.C. § 3 (requiring court to issue a stay upon compelling arbitration). Alternatively, to the extent Plaintiff is not required to arbitrate any claim, the Court should transfer this case to the Northern District of California pursuant to the parties' mandatory forum-selection clause. (O'Brien Decl. ¶ 7, Ex. C (2016 TOU ¶ 14A).)

## II.   FACTUAL BACKGROUND

**A.   Plaintiff Agreed to the Terms of Use When She Created Her Account.**

Glassdoor provides a database of company reviews, ratings, salary and benefits information, and job listings to help millions of job seekers find employment. (O'Brien Decl. ¶ 3.) Before submitting content, users must create a free account by registering with a valid email address, or linking a social media account. (*Id.* ¶ 4.) Use of Glassdoor is subject to the most current Terms of Use and Privacy Policy, and every registrant is notified that, by creating an account, he or she agrees to be bound by these agreements. (*Id.* ¶¶ 4-5, Ex. A.)

On February 20, 2015, Plaintiff registered for a Glassdoor account using her email address.[1] (*Id.* ¶ 5.) Plaintiff used the following modal on Glassdoor's website to create

---

[1] Glassdoor was unable to determine which email address included in its July 22, 2016 email to Glassdoor members belonged to Plaintiff through its own records. Glassdoor

her Glassdoor account:



(*Id*. ¶ 4, Ex. A.)

As the Court can see, Plaintiff was expressly notified that, "[b]y creating an account, [you] agree to Glassdoor's Terms of Use and Privacy Policy". (*Id*.) Plaintiff had notice of and an opportunity to review both agreements via the hyperlinks (underlined and in color) embedded directly under this statement. (*Id*.)[2] To complete registration, Plaintiff clicked the "Sign Up" button, thereby agreeing to the Terms of Use and Privacy Policy. (*Id*. ¶ 5.)

**B.    The Terms of Use Included a Binding Arbitration Provision.**

The Terms of Use agreement that Plaintiff agreed to when she created her account was Glassdoor's September 9, 2014 Terms of Use agreement. (O'Brien Decl ¶ 6, Ex. B (the "2014 Terms of Use" or "2014 TOU").) The 2014 Terms set forth procedures for

---

only discovered Plaintiff's email address when counsel for Glassdoor requested that counsel for Plaintiff confirm certain identifying information after this suit was filed.

[2]  Glassdoor's current and prior versions of its Terms were provided on its Glassdoor's website before, during, and after Plaintiff created her account.  (*Id*. ¶¶ 6-7; *see also* https://www.glassdoor.com/about/terms-history.htm (last visited October 5, 2016).)

dispute resolution and included an express agreement to arbitration. (*See id.*, Ex. B (2014 TOU ¶ 14 [the "Agreement to Arbitrate"]).)[3] The Agreement to Arbitrate provided in bolded, capitalized text that Glassdoor and users waived the right to a jury trial and agreed all disputes would be decided on an individual basis. (*Id.,* Ex. B (2014 TOU ¶ 14A).) Pursuant to the Terms, Plaintiff agreed to arbitrate all claims against Glassdoor arising under or related in any way to the parties' agreement, including Plaintiff's use of Glassdoor. (*Id.*, Ex. B (2014 TOU ¶ 14B).)

The parties also agreed that Glassdoor could make revisions to the Terms of Use agreement after providing notice:

> We may revise these Terms from time [*sic*] by posting an updated version on Glassdoor and ***you agree that the revised Terms will be effective*** thirty (30) days after the change is posted. ***Your continued use of Glassdoor is subject to the most current effective version of these Terms.***

(*Id.* ¶ 6, Ex. B (2014 TOU ¶ 13) (emphasis added).)

**C.** **Glassdoor Updated the Terms of Use and Agreement to Arbitrate in July 2016.**

Consistent with Section 13, Glassdoor amended its Terms in July 2016. (O'Brien Decl. ¶ 6, Ex. B (2014 TOU ¶ 13); ¶ 7, Ex. C (the "2016 Terms of Use" or "2016 TOU").) Glassdoor posted the updated Terms on its website and, though not required to do so, sent an email on July 22, 2016 to notify registered members of the changes. (*Id.* ¶ 8, Ex. D (Glassdoor's 7/22/16 Email).) The email included a hyperlink to the updated Terms and described some of the key changes, including the revised procedures for dispute resolution. (*Id.*)

---

[3]   Additionally, users were informed upfront at the beginning of the Terms of Use of their agreement to arbitration. (*See id.* ¶ 6, Ex. B (2014 TOU) ("*Please note:* These terms require the use of arbitration on an individual basis to resolve disputes, rather than jury trials or class actions, and also limit the remedies available to you in the event of a dispute.").)

Glassdoor's updated Terms provided more consumer-friendly arbitration procedures, including procedures for opting out. (*Id.* ¶ 7, Ex. C (2016 TOU ¶ 14.) The revised Terms stated in relevant part:

> If you reside in the United States, subject to the Exceptions to Arbitration set forth below, you and Glassdoor each agree that any and all disputes between consumer users of Glassdoor and Glassdoor arising under or related in any way to this Agreement and such users' use of Glassdoor must be resolved through binding arbitration as described in this section.

(*Id.*, Ex. C (2016 TOU ¶ 14B).)[4] As in the prior version, the amended agreement set forth in bolded, capitalized text the parties' waiver of class arbitration or litigation. (*Id.*, Ex. C (2016 TOU ¶ 14).)[5]

In addition to providing a new procedure for informal dispute resolution, the revised Terms allowed members to reject the amended Agreement to Arbitrate within thirty days:

> *Opt-Out Procedure.* **IF YOU ARE A GLASSDOOR USER, YOU CAN CHOOSE TO REJECT THIS AGREEMENT TO ARBITRATE ("OPT-OUT") BY MAILING US A WRITTEN OPT-OUT NOTICE ("OPT-OUT NOTICE"). THE OPT-OUT NOTICE MUST BE**

---

[4] The updated arbitration agreement also provided that "[t]he arbitrator will decide the substance of all claims in accordance with applicable law, including recognized principles of equity … ." (*Id.* ¶ 7, Ex. C (2016 TOU ¶ 14B).)

[5] Section 14 states: "**YOU AGREE THAT BY ENTERING INTO THIS AGREEMENT, YOU AND GLASSDOOR ARE EACH WAIVING THE RIGHT TO TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION. YOU AND GLASSDOOR AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. ANY ARBITRATION WILL TAKE PLACE ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT PERMITTED.**" (*Id.* ¶ 7, Ex. C (2016 TOU ¶ 14) (emphasis in original).)

**POSTMARKED NO LATER THAN 30 DAYS AFTER THE DATE**

**THESE TERMS FIRST BECOME APPLICABLE TO YOU.**

(*Id.* ¶ 7, Ex. C (2016 TOU ¶ 14B) (emphasis in original).) A hyperlink to the opt-out notice was provided below this bolded, capitalized text. (*Id.*) If a user timely opted out, all disputes must be exclusively litigated in Marin County or in the federal courts of the Northern District of California:

> For any claim, dispute, or other legal proceeding not subject to the "Agreement to Arbitrate" provision below, the claim or dispute shall be brought and litigated exclusively in the state courts located within Marin County, California or the federal courts in the Northern District of California, as appropriate, and you agree to submit to the personal jurisdiction of each of these courts for the purpose of litigating such claims or disputes.

(*Id.* ¶ 7, Ex. C (2016 TOU ¶ 14A).)

Finally, the updated Terms and Glassdoor's email informed users that, pursuant to the terms the parties previously agreed to, the updated Terms would become effective in thirty days and users could delete their account if they did not want to be subject to the updated Terms. (*Id.* ¶ 6, Ex. B (2014 TOU ¶¶ 12-13); ¶ 7, Ex. C (2016 TOU ¶¶ 11-12); ¶ 8, Ex. D (Glassdoor's 7/22/16 Email.)[6]

Here, Plaintiff has not opted out of arbitration or deleted her account. (*Id.* ¶¶ 9-10.) To the contrary, Plaintiff has continued to login and use Glassdoor, even after filing her Class Action Complaint. (*Id.* ¶ 9.) As demonstrated below, Plaintiff's claims must be submitted to individual arbitration pursuant to the parties' agreement.

---

[6] Glassdoor's Terms of Use survive account termination. (*Id.* ¶ 6, Ex. B (2014 TOU ¶ 12); ¶ 7, Ex. C (2016 TOU ¶ 11).) While current users are bound to the most current version of the Terms (based on the express terms originally assented to), users who delete their accounts are bound by the version of the agreement in effect at termination. (*Id.*)

## III.   ARGUMENT

### A.   Plaintiff Is Required to Arbitrate Her Claims.

Plaintiff's claims are subject to arbitration pursuant to Glassdoor's Terms of Use agreement and the parties' Agreement to Arbitrate. The liberal federal policy favoring arbitration agreements creates a strong presumption in favor of enforcement and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses J. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  Consistent with the Federal Arbitration Act ("FAA"), "courts must 'rigorously enforce' arbitration agreements according to their terms" so as to facilitate streamlined proceedings. *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2306 (2013); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010).[7]

In ruling on a motion to compel arbitration, the Court's role is to determine "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84 (2002)). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.*

---

[7]  The FAA governs an agreement to arbitrate where, as here, the economic activity of one of the parties (not necessarily the parties' transaction or the contract itself) has a nexus to interstate commerce. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74 (1995); *see also Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 57-58 (2003) (holding that neither the parties' agreement nor underlying transaction need be "in" interstate commerce; only the economic activity of the parties involved has to have some nexus to interstate commerce).

As set forth below, both conditions are satisfied, as Plaintiff agreed to the Glassdoor Terms of Use agreement, and her claims are covered by the broad arbitration provision.

### 1.   Plaintiff Agreed to Arbitrate When She Signed Up for a Glassdoor Account.

Plaintiff agreed to Glassdoor's Terms of Use, including the arbitration provision, when she created her account. Every user, including Plaintiff, is notified that "By creating an account, [you] agree to Glassdoor's Terms of Use and Privacy Policy" with underlined and colored hyperlinks to the Terms embedded directly in the statement. (O'Brien Decl. ¶¶ 4-5, Ex. A.) After being provided notice and an opportunity to review the full terms and privacy policy she was about to agree to, Plaintiff clicked the "Sign Up" button, indicating her agreement to be bound by the Terms. (*Id*.)

Courts in the Ninth Circuit considering similar agreements consistently compel arbitration and find that a binding contract is created where, as here, a user "was provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the 'I accept' button[,] and she admittedly clicked 'Accept.'" *Swyft v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 911-12 (N.D. Cal. 2011) (granting motion to compel where plaintiff was provided with a hyperlink to the full terms of service under the "I accept" button and clicked "I accept"); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1137 (N.D. Cal. 2015), *appeal dismissed*, 15-15556 (9th Cir. June 29, 2015) (holding that plaintiff could not have used the Zimride app without assenting to the app's Terms of Use and Privacy Policy where users clicked "Okay" next to hyperlinks to Zimride's Terms of Use and Privacy Policy when signing up).[8]

---

[8]  *See also Crawford v. Beachbody, LLC*, No. 14cv1583-GPC(KSC), 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (holding that plaintiff agreed to Terms and Conditions by clicking "PLACE ORDER" below a hyperlink within the statement "[b]y clicking Place Order below, you are agreeing that you have read and understand the Beachbody Purchase Terms and Conditions"); *Leong v. Myspace, Inc.*, No. CV 10-8366 AHM EX, 2011 WL 7808208, at *5 (C.D. Cal. Mar. 11, 2011) (holding that plaintiff had adequate notice of agreement that was "only a mouse-click away").

As in the foregoing cases, Plaintiff agreed to arbitration because she was provided adequate notice and a hyperlink to the Terms of Use agreement embedded within a statement affirming her assent. *See* section II.A, *supra*.[9] After receiving notice, Plaintiff had an opportunity to review the Terms, including the provisions requiring arbitration and allowing Glassdoor to make amendments.  By clicking the sign up button and creating an account, Plaintiff agreed to Glassdoor's Terms of Use agreement, including the Agreement to Arbitrate.

Plaintiff agreed to the amended Terms because she received notice of Glassdoor's revised Terms in 2016 and did not delete her account or opt out of arbitration. *See In re Facebook Biometric Information Privacy Litig.,* _ F. Supp. 3d _, 2016 WL 2593853, at *8 (N.D. Cal. 2016) (upholding enforceability of Facebook's amended user agreement and finding that users were deemed to have assented to the amended terms by their continued use where users with registered email addresses were provided email notice that the terms were changing with a link to the new terms and Facebook posted notice on its governance page). Plaintiff agrees that Glassdoor provided notice of the amended Terms in an email (Compl. ¶¶ 6, 22), yet her Complaint ignores that the 2014 and 2016 versions of the Terms also informed her that (1) continued use of Glassdoor subjected her to the most current version of the Terms of Use; (2) if she did not want to be subject to the revised Terms, she could delete her account before the amendments became effective (but she would still be bound to the prior Terms, even after termination); and (3) she could reject the amended Agreement to Arbitrate by timely opting out. *See* O'Brien Decl., Ex. B (2014 TOU ¶¶ 12-13), Ex. C (2016 TOU ¶¶ 11-12, 14B).) Because Plaintiff did not delete her account or opt out, she is bound by the updated Terms and amended Agreement to Arbitrate.

---

[9]  The FAA only requires that arbitration agreements be in writing and contains no other requirements regarding form or specificity, including whether agreements must be signed.  *See* 9 U.S.C. § 2; *Swift*, 805 F. Supp. 2d at 911-12 ("providing a user with access to the terms of service and requiring a user to affirmatively accept the terms, even if the terms are not presented on the same page as the acceptance button, are sufficient").

## 2.  **Plaintiff's Claims Are Covered by the Parties' Agreement to Arbitrate.**

The parties' Agreement to Arbitrate covers this dispute. "Because the scope of an arbitration agreement is a matter of contract, [the Court] must look to the express terms of the agreements at issue" to determine whether the parties intended Plaintiff's dispute to be arbitrated. *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 937-38 (9th Cir. 2013); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) (same). Courts broadly construe the scope of provisions where, as here, the provision requires arbitration of "any and all" disputes "arising under or relating to" the agreement containing the arbitration clause. *See Ferguson*, 733 F.3d at 938 (terms in enrollment agreement requiring arbitration of "any dispute" and "all claims" and disputes "arising from my enrollment" were sufficiently broad to cover plaintiffs' public injunction claims because allegations that school misrepresented the value and cost of education were "directly related to enrollment."); s*ee also Chiron Corp.*, 207 F.3d at 1131 (finding that there is "little doubt that the dispute is subject to arbitration" where the parties' "broad and far reaching" arbitration clause agreement covered "[a]ny dispute, controversy or claim arising out of or relating to" the agreement).

Courts within the Ninth Circuit have held that broad arbitration clauses, similar to the arbitration provision in the 2016 version of the Terms, cover disputes accruing before the agreement containing the arbitration clause comes into effect. *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721, 723-24 (9th Cir. 1999) (plaintiff required to arbitrate claims related to conduct occurring before the parties agreed to arbitration, because plaintiff's claims arose under the parties' current contract which contained a binding arbitration clause); *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007) (arbitration provision "encompass[ing] any dispute arising out of the agreement, KPMG's services thereunder, and 'any other services provided by or on behalf of KPMG'" was broad enough to cover disputes based on events that occurred

before the parties executed the contract containing the arbitration provision); *Trujillo v. Gomez*, No. 14CV2483 BTM BGS, 2015 WL 1757870, at *8 (S.D. Cal. Apr. 17, 2015) (arbitration clause covering "any claim or controversy arising out of or relating to this Agreement, the Corporation, or the rights or obligations of the Shareholders as Shareholders, officers, or employees or the Corporation" was broad enough to cover claims based on events pre-dating the agreement, noting that the clause "does not include any temporal limitations and is not limited to claims arising under the Agreement itself.").

Here, Plaintiff's claims are covered by the parties' Agreement to Arbitrate. Plaintiff alleges that she provided her email address when she signed up for an account, and Glassdoor allegedly promised to keep that information confidential, but failed to do so. (Compl. ¶¶ 6, 19, 27-29) (alleging that Glassdoor breached its agreements with Plaintiff by revealing user email addresses). All the claims asserted in Plaintiff's complaint are based on this alleged breach by Glassdoor and thus are covered by the Agreement to Arbitrate. *See Ferguson*, 733 F.3d at 938.

### 3. Any Challenges to Formation or Enforceability Are for the Arbitrator.

The Court should not consider any challenges to formation or enforceability and instead should compel any such disputes to arbitration. The Supreme Court has held that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 445-46 (2006); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71-73 (2010) (requiring basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 397 (1967) (under severability doctrine, challenges to entire contract must be resolved by arbitrator).

Even where a party opposing arbitration makes a specific challenge to the arbitration provision, disputes regarding formation and enforceability are for the arbitrator to decide where "the parties have demonstrated, clearly and unmistakably that

11

it is their intent to" delegate such questions to the arbitrator. *Rent-A-Ctr*, 561 U.S. at 79–80. Here, by expressly incorporating the rules of the American Arbitration Association, the parties have "clearly and unmistakably" agreed that the arbitrator decides all challenges to enforcement and arbitrability. *See Rent-A-Ctr*, 561 U.S. at 80. Indeed, "[v]irtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) (collecting cases from majority of circuits); s*ee also Brennan v. Opus Bank*, 796 F.3d 1125, 1130–31 (9th Cir. 2015) (incorporation of AAA rules constituted clear and unmistakable intent to delegate arbitrability questions to an arbitrator).[10]

As in these cases, the parties' arbitration provision incorporates and binds the parties to the Consumer Arbitration Rules of the AAA. (O'Brien Decl. ¶ 7, Ex. C (2016 TOU ¶ 14B).) AAA Rule 14(a), in turn, provides that the arbitrator has the power to rule on his or her jurisdiction, including any objections relating to "the ***existence, scope, or validity*** of the arbitration agreement ***or to the arbitrability of any claim*** or counterclaim." *See* AAA Consumer Arbitration Rule R-14(a) (emphasis added). Accordingly, all challenges to Glassdoor's Terms of Use agreement or the Agreement to Arbitrate are to be determined by the arbitrator.

---

[10] *Accord Qualcomm Inc. v. Nokia Corp.,* 466 F.3d 1366, 1373 (Fed. Cir. 2006) (applying Ninth Circuit law and holding that by agreeing to arbitrate under AAA rules, parties evidenced their unmistakable intent to delegate the issue of determining arbitrability to an arbitrator); *Yahoo! Inc. v. Iversen,* 836 F. Supp. 2d 1007, 1009 (N.D. Cal. 2011) (employment agreement's reference to the then current AAA rules required arbitrator to decide arbitrability); *Guidewire Software, Inc. v. Chookaszian,* No. 12–CV–03224–LHK, 2012 WL 5379589, at *4 (N.D. Cal. Oct. 31, 2012) (finding delegation provision was incorporated by reference to arbitration rules); *Crook v. Wyndham Vacation Ownership, Inc.,* No. 13–CV–03669–WHO, 2013 WL 6039399, at *4, 6 (N.D. Cal. Nov. 8, 2013) (same, in a time share agreement); *Kimble v. Rhodes Coll., Inc.,* No. 10–CV–05786–EMC, 2011 WL 2175249, at *4 (N.D. Cal. June 2, 2011) (same, in a college enrollment agreement).

**B.**     __This Action Should Be Stayed Pending Arbitration.__

A court should grant a motion to stay judicial proceedings after compelling arbitration. *See* 9 U.S.C. § 3 (requiring court to issue a stay upon compelling arbitration). The FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, ***shall*** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement ... .

9 U.S.C. § 3 (emphasis added).

Under this provision, a "federal case must be stayed while the parties proceed to arbitration." *Kilgore v KeyBank, Nat. Ass'n*, 673 F.3d 947, 955, 965 (9th Cir. 2012) (citing 9 U.S.C. § 3 and remanding with instructions to enter an order compelling arbitration and staying the action); *see also Rent-A-Ctr*, 561 U.S. at 68 ("Under § 3, a party may apply to a federal court for a stay of the trial of an action "upon any issue referable to arbitration under an agreement in writing for such arbitration.") "It would waste judicial resources . . . if the district court . . . were mandated to permit discovery, . . . take evidence and determine the merits of the case at the same time as the arbitrator is going through a substantially parallel process." *Leyva v. Certified Grocers of Cal. Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979); *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1115 (C.D. Cal. 2002) (compelling arbitration and, "having found that judicial economy and the desirability of avoiding possible inconsistent findings militate in favor of a stay," granting stay pursuant to 9 U.S.C. § 3). Therefore, this Court should stay all further proceedings until the parties complete arbitration.

1   **C.   To the Extent Plaintiff Is Not Required to Arbitrate, the Case Must Be**

2   **Transferred to the Northern District of California Under the Forum**

3   **Selection Clause.**

4   As shown, all Plaintiff's claims are subject to individual arbitration. But to the

5   extent Plaintiff is not required to arbitrate any claim, she was obligated to bring it in the

6   Northern District of California. (O'Brien Decl. ¶ 7, Ex. C (2016 TOU ¶ 14A) (any

7   disputes not subject to arbitration must be "brought and litigated exclusively in the state

8   courts located within Marin County, California or the federal courts in the Northern

9   District of California."), ¶ 6, Ex. B (2014 TOU ¶ 14A (same).)[11]

10   Forum selection clauses specified by contract, such as those contained in

11   Glassdoor's Terms of Use agreement, may be enforced by a motion to transfer under 28

12   U.S.C. § 1404(a), absent extraordinary circumstances. *Atl. Marine Const. Co. v. U.S.*

13   *Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 574 (2013). It is settled that a forum

14   selection clause "should be respected as the expressed intent of the parties." *Pelleport*

15   *Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 280 (9th Cir. 1984); *Atl.*

16   *Marine*, 134 S. Ct. 568, 581 (a contract containing a valid forum-selection clause

17   "represents the parties' agreement as to the most proper forum"). The Supreme Court

18   has made clear that forum selection clauses are prima facie valid and enforcement of "a

19   

20   [11]  As explained in section III.A.1, *supra*, Plaintiff agreed to Glassdoor's Terms of Use,

21   including the forum selection provision, when she created her account. *See Automattic*

22   *Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1022 (N.D. Cal. 2015) (defendant consented to

personal jurisdiction in California by accepting terms of service with a forum selection

22   clause providing for litigation of disputes in California); *Yelp Inc. v. Catron*, 70 F. Supp.

23   3d 1082, 1092 (N.D. Cal. 2014) (enforcing a forum selection clause in Yelp's terms of

24   service agreement, in connection with entering a default judgment against a user who

allegedly offered to create paid reviews of businesses in violation of the terms of

25   service); *Zaltz v. JDate*, 952 F. Supp. 2d 439, 454-56, 464 (E.D.N.Y. 2013) (granting

26   motion to transfer where all users were required to assent to Terms and Conditions by

(1) checking the box next to the statement "I confirm that I have read and agreed to the

27   Terms and Conditions of Service" including a hyperlink to the Terms, and (2) clicking

28   the "Accept and Continue" button).

valid forum-selection clause [should be] given controlling weight *in all but the most exceptional cases*.'" *Atl. Marine*, 134 S. Ct. at 581 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)) (emphasis added).

The presence of a valid forum-selection clause requires district courts to adjust their usual section 1404(a) analysis in three ways. *Atl. Marine*, 134 S. Ct. at 581-83. First, the plaintiff's choice of forum receives no weight, and, as the party defying the forum selection clause, plaintiff bears the burden of establishing that transfer to the bargained for forum is unwarranted.[12] Second, by agreeing to the forum-selection clause, the parties waived the right to challenge the selected forum as inconvenient.  And third, the law of the court in which the plaintiff inappropriately filed suit does not follow the case to the contractually-selected forum. *Atl. Marine*, 134 S. Ct. at 581-83.

Thus, in the "interest of justice," the Court must enforce a valid forum selection provision and transfer a case to the pre-selected forum, absent exceptional circumstances. *Id*. No such factors are present here, and Plaintiff has waived any argument based on convenience of the parties. *Id*. at 581.[13] Accordingly, to the extent any claim is not sent to arbitration, the Court should enforce the forum selection provision and transfer this case to the Northern District of California.

---

[12]  Specifically, a party resisting enforcement of a forum selection provision bears the heavy burden of showing that (1) inclusion of the clause in the agreement was the product of fraud or overreaching, (2) the party repudiating the clause would be deprived of his or her day in court if the clause was enforced, or (3) enforcement would contravene a strong public policy of the forum in which the suit was brought. *Murphy v. Schneider Nat'l Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004).

[13]  The fact that the contract containing the forum selection clause is a form agreement does not render the terms fraudulent or the product of overreaching, as courts routinely enforce forum selection clauses in form contracts. *See Carnival Cruise Line, Inc. v. Shute*, 499 U.S. 585, 595 (1991) (unequal bargaining power between the parties does not make a forum selection clause unenforceable).

## IV.   <u>CONCLUSION</u>

For these reasons, Glassdoor respectfully requests that this Court enter an order compelling arbitration of Plaintiff's claims and staying further judicial proceedings pending completion of arbitration.

DATED:  October 6, 2016                    GREENBERG TRAURIG, LLP

By:    <u>*/s/ Ian C. Ballon*</u>
IAN C. BALLON
ROBERT J. HERRINGTON
Attorneys for Defendant
GLASSDOOR, INC.